IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| WILLIE JOE STURKEY, # 146039, | C/A 2:13cv3451-RMG-WWD |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION |
| DIRECTOR OF SCDC, J. GATSON, and LT. BOUY, In their individual capacity, in their official capacity, | |
| Defendants. | |

This civil rights action pursuant to 42 U.S.C. § 1983[1] brought by a state prisoner proceeding pro se and in forma pauperis, is before the undersigned United States Magistrate Judge for a report and recommendation on the Defendants' summary judgment motion under FED.R.CIV.P. 56, 28 U.S.C. § 636(b)(1), and Local Rule 73.02(B)(2)(d), D.S.C.

The Plaintiff, Willie Joe Sturkey, #146039, brought this action on December 11, 2013, against the Director of the South Carolina Department of Corrections (SCDC), J. Gatson, the Director of Classification at SCDC, and Lt. Bouy, the manager of the Charleston Unit of Ridgeland Correctional Institution (RCI), all of whom are employed by

---

[1] Section 1983, titled a civil action for deprivation of rights reads in relevant portion:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. §1983.

1

the SCDC. (Dkt 1). Sturkey amended his complaint on February 11, 2014. (Dkt. 22). The Defendants filed their motion for summary judgment on April 30, 2014, along with the affidavits of Defendants Bouy and Gaston, Plaintiff's medical records, an incident report, and correspondence from Robert E. Ward, Deputy Director for Operations to the Plaintiff. (Dkt. 35). Defendants also filed the affidavit of Chris Lloyd, RN, on May 1, 2014. (Dkt.38).

On April 30, 2014, Sturkey was provided an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) advising him of the importance of such motions and of the need for him to file an adequate response. He moved for an extension of time to oppose the motion, which was granted on May 23, 2014. Sturkey responded with a memorandum in opposition to the motion on July 7, 2014, with exhibits, including a "Health Summary for Classification/Assignment" created at Kershaw Correctional Institution (KCI) on October 22, 2010, and a "Cell Assignment Form" from KCI dated December 6, 2011. The Defendants replied on July 16, 2014, and Sturkey filed an opposition to the reply on August 8, 2014. Hence, it appears that consideration of the motion is appropriate.

## THE COMPLAINT

In his verified amended complaint, Plaintiff claims that he was subjected to deliberate indifference to his serious medical needs and deprived of his due process rights in violation of the Eighth and Fourteenth amendments, respectively. Plaintiff states that he was incarcerated at KCI in October 2010 where he was assigned to a bottom bunk, due to chest pain, high blood pressure, and high cholesterol. Thereafter he was transferred to RCI on March 12, 2012, where he was assigned to the Savannah

Unit and then, on May 10, 2012, to the Charleston Unit by Defendant Bouy and Major Eikenburger[2] despite the fact that "Lt. Bouy had been informed by classification that he was being treated for cardiac problems, high blood (sic), and high cholesterol." He was assigned a top bunk on the second floor even though he "informed Lt. Bouy that I have a medical condition that requires for me to be assigned on the bottom floor/bottom bunk." Defendant Bouy allegedly disregarded the Plaintiff's continued complaints about his cell and bunk assignment.

Plaintiff stated that he then informed the doctor about not being given a bottom bunk. The doctor "immediately send a message to Lt. Bouy on June 7, 2012, to move me accordingly to my Medical Class." Plaintiff alleged he slipped and fell, injuring his back, on June 11, 2012, while he was moving from the top tier to the bottom tier. He alleged that he fell because he became dizzy.

Then he submitted a grievance to Defendant Gatson "who failed to correct the issue with corrective action upon Lt. Bouy and denied his complaint," in violation of Plaintiff's Fourteenth Amendment rights.

Plaintiff claims Defendant SCDC Director did not properly supervise, manage, and control his staff, and was therefore also deliberately indifferent to his medical needs, violated his due process rights, and was grossly negligent.

Plaintiff sued all Defendants in their individual and official capacities. He seeks a declaratory judgment, as well as compensatory and punitive damages.

---

[2] Eikenburger was not named as a Defendant.

SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue of material fact. Id. at 324.

Under this standard, the existence of a mere scintilla of evidence in support of the Petitioner's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. Ross v.

4

Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985).

Pro se complaints are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978), and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). When a federal court is evaluating a pro se complaint, the Plaintiff's allegations are assumed to be true. De'Lonta v. Angelone, 330 F.3d 630, 630 n. 1 (4th Cir.2003). Nevertheless, the requirement of liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir.1990).

## DEFENDANTS' GROUNDS FOR SUMMARY JUDGMENT

Defendants seek an order granting summary judgment based upon the following legal grounds:

    1. Plaintiff has failed to exhaust his administrative remedies prior to filing suit.

    2. Plaintiff's 42 U.S.C. § 1983 claims against Defendants in their official capacities are barred pursuant to Eleventh Amendment Immunity.

    3. There is no evidence to support Plaintiff's claims of supervisory liability against SCDC Director in his individual capacity.

    4. There is no evidence that Defendants were deliberately indifferent to any serious medical need of the Plaintiff.

    5. Defendants are entitled to qualified immunity.

    6. Defendants are entitled to summary judgment as to Plaintiff's State law tort claims of gross negligence.

DISCUSSION

A review of the record and relevant case law reveals that the Defendants are entitled to judgment as a matter of law. Defendants' grounds will be reviewed seriatim.

First, Defendants have pled the affirmative defense of failure to comply with the Prison Litigation Reform Act's (PLRA) exhaustion requirement and move for summary judgment on that basis as well as on the merits of the allegations. The PLRA requires that a prisoner exhaust the available administrative remedies before filing a §1983 action concerning conditions of his confinement. 42 U.S.C. 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended § 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a).

Accordingly, before Plaintiff may proceed with his claims in this Court, he must first exhaust all administrative remedies available through the SCDC grievance process. A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. Woodford v. Ngo, 548 U.S. 81,126 S.Ct. 2378, 2386 (2006).

In his Complaint, Plaintiff indicated that there is a prisoner grievance procedure available at his institution. (Dkt. 1 and 1-1). Although Plaintiff submitted a grievance against Defendant Buoy concerning his allegation that she ignored his medical classification, he has taken no step towards exhausting his administrative remedies as

to the SCDC Director and Juanita Gaston.  Plaintiff has, therefore, failed to exhaust his administrative remedies prior to filing this § 1983 action against Defendants SCDC Director and Gaston, and summary judgment in their favor is appropriate as a matter of law.

Second, all Defendants are shielded by Eleventh Amendment immunity from suit in their official capacities, so that those claims should be dismissed.  The Eleventh Amendment bars suits against a state by citizens of another state or a foreign country, and bars suits against a state by citizens of that state. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89 (1984), cert. denied, 498 U.S. 850 (1990).  This immunity from suit conferred on states by the Eleventh Amendment extends to suits against state agencies, such as the SCDC and its employees.  A suit against state officials in their official capacities is construed as being against the State itself and is barred by the Eleventh Amendment absent consent to suit or waiver of immunity. Id. at 98-100; see also, Jensen v. Conrad, 570 F. Supp. 91, 97 (D.S.C.), aff'd. 747 F.2d 185 (4th Cir. 1984), cert denied, 470 U.S. 1050 (1985); Coffin v. S.C. Department of Social Services, 562 F. Supp. 579, 584 (D.S.C. 1983).

As stated above, during the times of which Plaintiff complains, the SCDC Director, Juanita Gaston, and Wanda Buoy were all employees of the South Carolina Department of Corrections and the State of South Carolina, and protected by the Eleventh Amendment and summary judgment is proper on all official capacity claims.[3]

---

[3] Still, although Congress may expressly abrogate a State's Eleventh Amendment immunity pursuant to its enforcement power under the Fourteenth Amendment, the Supreme Court has consistently held that neither a State agency nor a State official in his official capacity is a "person" for purposes of a §1983 damages action. Will v. Michigan Department of State Police, 109 S. Ct. 2304 (1989).

Third, Plaintiff has named "SCDC Director"[4] individually as a Defendant in this action. To the extent Plaintiff seeks compensatory damages against a SCDC Director, it is under a theory of respondeat superior, and he is entitled to summary judgment. In Monell v. Department of Social Services, 436 U.S. 658 (1978), the United States Supreme Court held that a claim based on the doctrine of respondeat superior does not give rise to a §1983 claim. It is beyond argument that the personal participation of a Defendant in a tort of constitutional magnitude is a necessary element of a § 1983 claim against a governmental official in his individual capacity. To state a claim against a Defendant in their individual capacity, a Plaintiff must affirmatively show that the Defendant acted personally in the deprivation of the Plaintiff's constitutional rights. Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977).

In the instant case, Plaintiff has failed to show any direct or personal involvement of former Director Byars with regard to any of his claims. As such, former SCDC Director Byars is entitled to summary judgment to the extent the allegations are premised upon a theory of respondeat superior due to his lack of personal participation in the acts or omissions alleged. When a complaint contains no personal allegations against a Defendant, as here, that Defendant is properly dismissed.

Fourth, there is no evidence in this record that Defendants were deliberately indifferent to any serious medical need of the Plaintiff. While Plaintiff alleges generally that Defendant Lt. Buoy was deliberately indifferent to his serious medical needs, and

---

[4] While Plaintiff was incarcerated at RCI, the SCDC Director was William R. Byars, Jr.. In the event that Plaintiff intended to sue the current SCDC Director, all of the same legal arguments apply and summary judgment is appropriate as a matter of law.

furthermore that she delayed and/or denied him "proper medical treatment" (See Complaint and Amended Complaint), Lt. Buoy specifically denies these allegations in her Answer and Affidavit. The same allegations are wholly unsupported by the medical records; in fact they document no delay in treatment or nexus between Plaintiff's cell/bunk and his alleged fall.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-105 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. Id. The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. Id. at 104. To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Deliberate indifference is a very high standard. The Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness"; "mere negligence or malpractice does not violate the Eighth Amendment." Miltler v. Beorn, 896 F.2d 848, 851 (4th Cir.1990) overruled in part on other grounds by Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Unless medical

9

needs were serious or life threatening, and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the Plaintiff may not prevail. Estelle, 429 U.S. 104; Farmer, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Mere negligence, malpractice, or incorrect diagnosis is not actionable under § 1983. Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir.2010) (internal quotation marks and citation omitted); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Even reading the Complaint in the most favorable light to the Plaintiff, he failed to state an actionable constitutional claim for deliberate indifference to a serious medical need. First, with regard to the objective prong of the Estelle test, there is no evidence that the Plaintiff had sufficiently serious medical needs such that his housing assignment *caused* his injury. There is no objective record of any problems caused by Plaintiff's temporary housing assignment until his alleged slip and fall almost a month after his move for security reasons. Plaintiff's fall was witnessed by no one other than the Plaintiff and occurred as he was moving his belongings into his bottom floor cell when the cell became available. Plaintiff filed no grievances or requests to staff prior to this, nor is there any indication in the medical records that his medical conditions were compromised or exacerbated during this time.

Finally, there is nothing in the medical records to indicate that Plaintiff's alleged fall on June 11, 2012, was caused or contributed to in any manner whatsoever by his having been housed for twenty-eight (28) days on the second floor/top bunk.  Such an allegation would need to be substantiated by a medical professional, and the Plaintiff has presented none in support.

The Plaintiff's medical records provide ample evidence that between his move to Charleston Unit on May 14, 2012, and June 11, 2012, the Plaintiff:

(a) would hurt himself if placed in Charleston Dorm (5/14/12);

(b) was non-compliant with his medications (5/20/12);

(c) told medical that he did not need certain medications (5/23/12);

(d) wanted to get off all of his medications to get his medical class changed (6/1/12);

(e) does push-ups, walks and stair steps for exercise (6/1/12);

(f) wanted to get his med class changed to get to another institution (6/7/12);

(g) wanted medical to contact security about being moved to a different building (6/7/12);

(h) blood pressure and pulse were normal, with no complaints (6/8/12).

(Dkt. 35 Ex. 2].

On the day that he fell, he was taken immediately to medical for evaluation.  On that medical encounter, Plaintiff was quoted as saying, "I was moving to another dorm and was carrying a box and I got dizzy and slipped down the stairs. I did not hit anything – just pulled my back a little. Was dizzy but better now." (Dkt. 35 Ex. 2).  The treating nurse noted "no distress," range of motion normal, no swelling, and no discoloration. Id.

The Plaintiff was assessed with "musculoskeletal discomfort" and given over-the-counter pain medications. Id.  There is no indication of any delay in treatment and no indication that his fall and resulting minor back discomfort were related in any way to his cell assignment.

Nevertheless, Plaintiff characterized a medical note as "ordering" or "advising" Defendant Buoy that Plaintiff required housing on the bottom floor/bottom bunk due to his medical condition.  The June 7, 2012, medical encounter note referenced by Plaintiff states merely, "Please contact security about transferring to another building. Has to remain on daily nursing for now. Cannot change classification." (Dkt. 51, Ex. 3 to Plaintiff's Response).  There is no mention of a bottom floor/bottom bunk restriction. There is no evidence that this request that Plaintiff be moved to another building was actually ever transmitted to Defendant Buoy or received by her.  In this regard, Lt. Buoy's affidavit denying same, speaks for itself.

Importantly, as Nurse Lloyd attests in his affidavit, there is no clinical correlation between Plaintiff's temporary housing on the second floor of the unit and his alleged fall. (Dkt. 38 Aff. of Chris Lloyd, RN, ¶¶ 3 and 7).  Simply put, Plaintiff cannot meet the high burden of proof that Defendant Buoy actually knew of and ignored any serious medical need of the Plaintiff.  There is no evidence that Defendant Buoy was deliberately indifferent to the Plaintiff in violation of his Eighth Amendment right and summary judgment is proper as a matter of law.

Fifth, Defendants correctly assert that they are entitled to qualified immunity. Qualified immunity is available to officials sued for both actual and punitive damages in their personal capacity.  "An official performing discretionary functions. . . generally is

shielded from liability for civil damages if his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).

Qualified immunity "should be addressed at the pleading or summary judgment stage." Smith v. Reddy, 101 F.3d 351, 357 (4th Cir. 1996). The Supreme Court has directed that "qualified immunity questions should be resolved at the earliest possible stage of litigation." Anderson v. Creighton, 482 U.S. 635, 646, n.6, 107 S.Ct.. 3034, 3042, n. 6 (1987). "The reason is that qualified immunity is an immunity from suit rather than a mere defense to liability; ... it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 2815 (1985); Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "The determination whether an officer acted with objective reasonableness necessary to entitle him to qualified immunity ... is ultimately a question of law for this court." Torchinsky v. Siwinski, 942 F.2d 257, 260 (4th Cir. 1991). An inquiry under a qualified immunity analysis must be particularized and fact-specific. Anderson v. Creighton, 482 U.S. 635, 640 (1987). The standard created by Harlow, is an objective one and is based upon the law at the time the alleged violation occurred. The defense of qualified immunity enables governmental officials to carry out their duties free from the specter of civil liability for every mistake they make. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335 (1986). The law recognizes that law enforcement and corrections officers are not perfect and allows officers reasonable margins of error. See Lowery v. Stovall, 92 F.3d 219 (4th Cir. 1996); Smith v. Reddy, 101 F.3d 351 (4th Cir. 1996); Rowland v. Perry, 41

F.3d 167 (4th Cir. 1994); Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994); Taylor v. Farmer, 13 F.3d 117 (4th Cir. 1993). In short, as discussed above, Plaintiff failed to demonstrate that any Defendant violated any of his clearly established constitutional rights. These Defendants had neither objective nor subjective knowledge that they could have been violating Plaintiff's constitutional rights, as all of their actions were objectively reasonable under the circumstances of which they were aware.

Sixth, to the extent Plaintiff's Complaint and/or Amended Complaint can be read to include state tort claims, summary judgment should be granted as a matter of law. As stated above, at the time of the events complained of, Defendants were all employees of the State of South Carolina. The South Carolina Tort Claims Act is the exclusive civil remedy available for any tort committed by a governmental entity, its employees or its agents. S.C. Code Ann. §15-78-20 (b). When a plaintiff alleges an employee of a governmental entity has committed a tort while acting within the scope of his official duty, § 15-78-70(c) generally provides that a Plaintiff can only name as a Defendant the governmental entity for which the employee was acting. The employee of the governmental entity cannot be sued directly, except when it is proven that the actions of the employee were not within the scope of their official duty. S.C. Code Ann. § 15-78-70.

In the instant case, Plaintiff failed to provide evidence that would tend to support that any actions or inactions on the part of Defendants constituted conduct "not within the scope of [their] official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. §15-78-70 (b). Likewise, Plaintiff has not shown that any actions or inactions on the part of these Defendants

were grossly negligent or even that they proximately caused him any injury. As set forth as an affirmative defense to Plaintiff's Complaint, these Defendants have not waived their immunity from suit under the express provisions of the South Carolina Tort Claims Act, and summary judgment should be granted on any remaining State tort claims in Plaintiff's Complaint.

## Conclusion

Accordingly for the aforementioned reasons, it is recommended that the Defendants' motion for summary judgment be granted, any outstanding motions be denied as moot, and this matter ended.

IT IS SO RECOMMENDED.

*/s/ Wallace W. Dixon*
WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

September 8, 2014
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

15

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).